UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CASE NO: 3:21-CV-174

**AMANDA BOARDMAN,**
individually and on behalf of all
others similarly situated,

**CLASS ACTION**

Plaintiff,

**JURY TRIAL DEMANDED**

v.

**GREEN DOT CORPORATION,**

Defendant.
_____/

## CLASS ACTION COMPLAINT

Plaintiff Amanda Boardman brings this class action against Defendant Green Dot Corporation ("Defendant") and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1. This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.* (the "TCPA").

2. Defendant operates an online and mobile bank account company with over 33 million customers.[1]

3. Defendant also uses an automatic telephone dialing system to send mass automated marketing calls to individuals' cellular phone numbers without first obtaining the required express written consent, and in violation of the National Do Not Call Registry.

---

[1] www.greendot.com

1

4. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of Plaintiff and members of the Class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

5. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.* ("TCPA").

6. The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant directs, markets, and provides its business activities to this District, and because Defendant's unauthorized marketing scheme was directed by Defendant to consumers in this District, including Plaintiff.

7. Furthermore, Defendant initiated and directed, or caused to be initiated and directed, the transmission of unsolicited text messages to Plaintiff's cellular telephone number (the "8255 Number"). Plaintiff received such messages on the 8255 Number while residing in and physically present in North Carolina.

## PARTIES

8. Plaintiff is a natural person who, at all times relevant to this action, was a resident of the State of North Carolina.

9. Defendant is a corporation whose principal office is located in California. Defendant directs, markets, and provides its business activities throughout the state of North Carolina.

10. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendant.

## THE TCPA

2

11. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

12. The TCPA exists to prevent communications like the ones described within this Complaint. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

13. In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

14. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

15. In 2012, the FCC issued an order further restricting automated <u>telemarketing</u> calls, requiring "prior express <u>written</u> consent" for such calls. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

16. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

17. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

18. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

19. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

20. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*. *Id*.

21. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

22. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

## **FACTS**

23. On February 25, 2021, Defendant caused the following text messages to be transmitted to Plaintiff's cellular telephone number ending in 8255 ("8255 Number"):



24. Plaintiff has no account or card with Defendant and has never provided the 8255 Number to Defendant.

25. Also on February 25, 2021, Plaintiff called Defendant and spoke to "Jason" to tell him that the 8255 Number should no longer be contacted. Plaintiff was informed by Defendant that the 8255

Number had been removed from the account and that Plaintiff would not receive any more text messages.

26. Over the next few weeks, Defendant continued to send Plaintiff text messages and Plaintiff continued to request that the messages stop.

[Screenshots of text messages between Plaintiff and short code 43411:

Fri, Feb 26, 12:21 PM
GreenDot: Your debit card ending in 8130 is locked. Log into the app when you're ready to unlock it.

Plaintiff: Stop

Green Dot Alert: You have discontinued all Green Dot alerts and no more msgs will be sent. For more information call (866) 795-7597

Sat, Feb 27, 6:56 AM
Green Dot: Your PIN was changed. If you didn't request this change, please contact Customer Service. STOP 2 Cancel

Green Dot: Your debit card ending in 8130 is now unlocked. Log into the app if you need to lock it again.

Yesterday 4:32 PM
Green Dot: Use the app to make free cash deposits to your account. Learn how: http://bit.ly/2mdmh2G STOP 2 Cancel

---

Yesterday 6:24 PM
Green Dot: Your debit card ending in 8130 is now unlocked. Log into the app if you need to lock it again.

Plaintiff: Stop

Green Dot Alert: You have discontinued all Green Dot alerts and no more msgs will be sent. For more information call (866) 795-7597

Yesterday 8:27 PM
GreenDot: Your debit card ending in 8130 is locked. Log into the app when you're ready to unlock it.

Plaintiff: STOP!!!!!!!!!!!!!!!

The keyword you specified was not recognized.

Plaintiff: STOP

Green Dot Alert: You have discontinued all Green Dot alerts and no more msgs will be sent. For ...]



27. On March 18, 2021 and March 19, 2021, Defendant caused the following automated marketing text messages to be transmitted to Plaintiff's cellular telephone number ending in 8255 ("8255 Number"):

7



28. The purpose of these text messages is to promote and market Defendant's products, goods and or services. The hyperlink[2] in these text messages leads to a website where if Plaintiff "activate[s] any new Green Dot card then direct deposit[s] [her] federal or state tax refund and [makes] two qualifying Direct Deposits of $500+ each by 6/30.21" she will get a one time $15 credit.

---

[2] www.bit.ly/3afNA2j





29. The 8255 Number has been on the National Do Not Call Registry since 2007.

30. At the time Plaintiff received these text messages Plaintiff was the subscriber and/or sole user of the 8255 Number.

31. Upon information and belief, Defendant does not maintain policies, procedures or protocols to maintain an internal do-not call list.

32. At all times relevant to this action, the 8255 Number has been a residential phone number.

9

33. Plaintiff never provided Defendant with express written consent to contact her cellular telephone with advertisements using an automatic telephone dialing system ("ATDS").

34. The impersonal and generic nature of Defendant's text message, demonstrates that Defendant utilized an ATDS in transmitting the text messages. The messages include no personal identifiers and are formatted in a generic manner.

35. The text messages also include instructions on how to respond so that the ATDS will understand the command. For example "Stop 2 cancel."

36. The number used by Defendant to send the text messages (43411) is known as a "short code," a 5-digit phone number that enabled Defendant to send SMS text messages *en masse*.

37. To send the text messages, Defendant used a text messaging platform (the "Platform") that permitted Defendant to transmit bulk SMS text messages. Systems like the Platform utilized by Defendant have the capacity to transmit thousands of messages per second and are technologically more sophisticated in their availability to transmit messages than a traditional smartphone.

38. The Platform utilized by Defendant is an ATDS because it has the capacity to (1) store telephone numbers; (2) using a random or sequential number generator.

39. Specifically, the Platform has the capacity to indefinitely store telephone numbers within a computer database for subsequent dialing.

40. Further, the Platform has the capacity to utilize a random and sequential number generator in the storage of those numbers, and does in fact utilize said number generator for a variety of functions including, but not limited to, the selection and creation of SMS packets containing the target telephone numbers to be dialed by the Platform, as well as the sequential and/or random selection of telephone numbers to be dialed from a preselected list of numbers.

41. A packet in the context of SMS transmission is an envelope of data that contains various instructions and content, including the target cellular telephone number to be dialed, the sequence in which to dial each number, and wording of the message. The following is an example of an typical SMS packet:

SubmitReq:StatusReportReq=true,Destination=0011166500313,Sequence=35722139,Originator=91157,OriginatorType=3,Body=3:2e:0a1 1:2f14:2f11:0aDEBIT(p)$1:2e47:0aCHKCARDFOUTSETCROBER TIDUS:0aFornexttransaction:3aReplyN:0aForprevious:3aReplyP,BillingRef=,ClientRef=41883049-1,ProfileId=31174,Operator=31003,Tariff=0,Tag-Program=stdrt,TagChClientID=31174,TagChUsername=corvette_311 74,ServiceId=51437,Interface=xml,

42. In the context of SMS packet creation, the Platform utilizes a random and/or sequential number generator to pull and generate telephone numbers from a list of numbers and transfer those numbers to a separate list for the creation of the packets, and ultimately placement into each independent SMS packet.

43. In the context of dialing the numbers, the Platform utilizes a random and/or sequential number generator to pick and designate the sequence in which to dial the telephone numbers. The Platform independently selects the rate and time at which to dial each telephone numbers and may temporarily store the packets in a queue when the volume exceeds capacity to deliver them.

44. The Platform also has the capacity to use its random and/or sequential number generator to generate random or sequential identification numbers that it assigns to each SMS packet.

45. Defendant's unsolicited calls caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's calls also inconvenienced Plaintiff and caused disruption to her life.

## CLASS ALLEGATIONS

### PROPOSED CLASS

46. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of Plaintiff and all others similarly situated.

47. Plaintiff brings this case on behalf of the Classes defined as follows:

**NO CONSENT CLASS: All persons in the United States who, within four years prior to the filing of this action, (1) were sent a text message by or on behalf of Defendant, (2) using the same equipment or type of equipment**

utilized to text message Plaintiff, (3) regarding Defendant's property, goods, and/or services.

**DO NOT CALL REGISTRY CLASS**: All persons in the United States who from four years prior to the filing of this action: (1) were sent a text message, prerecorded message or phone call by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of advertising and/or promoting Defendant's products and services.

**INTERNAL DO NOT CALL CLASS**: All persons within the United States who, within the four years prior to the filing of this Complaint, (1) were sent a text message from Defendant or anyone on Defendant's behalf, (2) regarding Defendant's goods, products or services, (3) to said person's residential telephone number, (4) after making a request to Defendant to not receive future text messages.

48. Plaintiff reserves the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery.

49. Defendant and its employees or agents are excluded from the Classes. Plaintiff does not know the number of members in each the Class but believes the Class members number in the several thousands, if not more.

### NUMEROSITY

50. Upon information and belief, Defendant has placed automated calls and prerecorded messages to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

51. The exact number and identities of the members of the Class are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

### COMMON QUESTIONS OF LAW AND FACT

52. There are numerous questions of law and fact common to members of the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the members of the Class are:

a) Whether Defendant made non-emergency calls to Plaintiff's and Class members' cellular telephones using an ATDS;

b) Whether Defendant can meet its burden of showing that it obtained prior express written consent to make such calls;

c) Whether Defendant's conduct was knowing and willful;

d) Whether Defendant initiated telemarketing calls to telephone numbers listed on the National Do Not Call Registry;

e) Whether Defendant initiated telemarketing calls to telephone numbers who requested to not receive such calls;

f) Whether Defendant is liable for damages, and the amount of such damages; and

g) Whether Defendant should be enjoined from such conduct in the future.

53. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits calls to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

54. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

55. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

56. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class

13

Case 3:21-cv-00174-FDW-DSC   Document 1   Filed 04/20/21   Page 13 of 19

resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

57. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
## VIOLATION OF 47 U.S.C. § 227(b) and 47 C.F.R. § 64.1200
**(On Behalf of Plaintiff and the No Consent Class)**

58. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

59. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

60. It is a violation of the TCPA regulations promulgated by the FCC to "initiate any telephone call…using an automatic telephone dialing system…To any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 C.F.R. § 64.1200(a)(1)(iii).

61. Additionally, it is a violation of the TCPA regulations promulgated by the FCC to "[i]nitiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system…other than a call made with the

prior express written consent of the called party or the prior express consent of the called party when the call is made …" 47 C.F.R. § 64.1200(a)(2).

62. Defendant utilized equipment with the capacity to store telephone numbers using a random or sequential number generator to make non-emergency telephone calls to the cellular telephones of Plaintiff and members of the No Consent Class.

63. These calls were made without the express written consent of Plaintiff and the No Consent Class members.

64. Defendant has, therefore, violated § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200 of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their consent.

65. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the members of the Class are also entitled to an injunction against future calls. Id.

**COUNT II**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

66. Plaintiff re-alleges and incorporates the allegations of paragraphs 1-57 as if fully set forth herein.

67. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

68. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

15

69. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

70. Any "person who has received more than one telephone call within any 12- month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

71. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

72. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

73. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**COUNT III**
**VIOLATION OF 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)**
**(On Behalf of Plaintiff and the Internal Do Not Call Class)**

74. Plaintiff re-alleges and incorporates the foregoing allegations set forth in paragraphs 1 through 57 as if fully set forth herein.

75. In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone **subscriber** unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> **(1)** *Written policy.* Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> **(2)** *Training of personnel engaged in telemarketing.* Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

76. Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

77. Plaintiff and the Internal Do Not Call Class members made requests to Defendant not to receive calls from Defendant.

78. Defendant failed to honor Plaintiff and the Internal Do Not Call Class members opt-out requests.

79. Defendant's refusal to honor opt-out requests is indicative of Defendant's failure to implement a written policy for maintaining a do-not-call list and to train its personnel engaged in telemarketing on the existence and use of the do-not-call-list.

80. Thus, Defendant has violated 47 C.F.R. § 64.1200(d).

81. Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the Internal Do Not Call Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation.

82. As a result of Defendant's knowing or willful conduct, Plaintiff and the Internal Do Not Call Class members are entitled to an award of $1,500.00 in statutory damages per violation.

83. Plaintiff and the Internal Do Not Call Class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to section 227(c)(5).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) As a result of Defendant's negligent violations of 47 U.S.C. §§ 227, et seq., and its implementing regulations, Plaintiff seeks for himself and each member of the Class $500.00 in statutory damages for each and every violation pursuant to 47 U.S.C. § 277(b)(3);

b) As a result of Defendant's knowing and/or willful violations of 47 U.S.C. §§ 227, et seq., and its implementing regulations, Plaintiff seeks for himself and each member of the Classes treble damages, as provided by statute, up to $1,500.00 for each and every violation pursuant to 47 U.S.C. § 277(b)(3)(B) and § 277(b)(3)(C);

c) An order declaring that Defendant's actions, as set out above, violate the TCPA and its implementing regulations;

d) An injunction requiring Defendant to cease all unsolicited text messaging activity, and to otherwise protect the interests of the Class;

e) An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, recipient's consent to receive calls made with such equipment;

f) A declaration that Defendant's practices described herein violate 47 C.F.R. § 64.1200;

g) A declaration that Defendant's violations of 47 C.F.R. § 64.1200 were willful and knowing; and

h) An injunction requiring Defendant to cease all unsolicited call activity without obtaining consent first, cease initiating calls to telephone numbers listed on the National Do Not Call Registry and to cease all activity to individuals who have requested to be removed from Defendant's consent list and to otherwise protect the interests of the Class;

i) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant takes affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with Defendant and the communication or transmittal of the text messages as alleged herein.

Dated: April 20, 2021

<u>s/ David M. Wilkerson</u>
DAVID M. WILKERSON
NC State Bar No. 35742
Attorney for Plaintiff
The Van Winkle Law Firm
11 N. Market Street
Asheville, North Carolina 28801
(828)258-299 (phone)
(828)257-2767 (fax)
dwilkerson@vwlawfirm.com

Ignacio Hiraldo, Esq.
IJhiraldo@Hiraldolaw.com
**IJH Law**
1200 Brickell Ave.
Suite 1950
Miami, FL 33131
E: IJhiraldo@IJhlaw.com
T: 786-496-4469
Pro Hac Vice to be filed

*Attorneys for Plaintiff and the Proposed Class*

19