**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

**Civil Action No. 3:21-cv-00174-FDW-DSC**

AMANDA BOARDMAN,
individually and on behalf of
all others similarly situated,

Plaintiff,

vs.

GREEN DOT CORPORATION,

Defendant.

**DEFENDANT GREEN DOT CORPORATION'S MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................................. 1

RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS ...................................................... 2

LEGAL STANDARD ................................................................................................................. 6

ARGUMENT .............................................................................................................................. 7

I.      PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE
THERE IS NO EVIDENCE TO SUPPORT THE RESIDENTIAL TELEPHONE
SUBSCRIBER ELEMENT OF THE CLAIM .................................................................. 8

II.    GREEN DOT DID NOT VIOLATE 47 C.F.R. § 64.1200(d) ........................................ 11

      A.     It Is Undisputed That Green Dot Complied with Regulatory Standards ............. 11

      B.     Green Dot Honored Plaintiff's Opt-Out Request Within 30 Days ..................... 13

      C.     It Is Undisputed That Green Dot's March 18 and 19 Messages Were Sent
In Error and the Safe Harbor Applies .................................................................. 14

      D.     It Is Undisputed That Green Dot's March 18 and 19 Messages Were Sent
In Error and Were Not Willful or Knowing ......................................................... 15

CONCLUSION ......................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).........................................................................................................6

*In re Caucus Distribs., Inc.*,
    83 B.R. 921 (Bankr. E.D. Va. 1988)............................................................................10

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).........................................................................................................6

*Clauss v. Legend Securities, Inc.*
    No. 4:13–cv–00381–JAJ, 2014 WL 10007080 (S.D. Iowa Sept. 8, 2014) ..............9

*Cunningham v. Politi*,
    No. 4:18-CV-00362-ALM-CAN, 2019 WL 2519702 (E.D. Tex. Apr. 26,
    2019), *adopted by* 2019 WL 2526536 (E.D. Tex. June 19, 2019); ..........................8

*Duarte v. Truist Bank*,
    No. 3:20-CV-00270, 2021 WL 4810337 (W.D.N.C. Oct. 14, 2021) ...................6, 7

*In Re Dynasty Mortg., L.L.C.*,
    20 F.C.C. Rcd. 4921 (2005).........................................................................................13

*Hand v. Beach Ent. KC, LLC*,
    456 F. Supp. 3d 1099 (W.D. Mo. 2020) ....................................................................9

*Jacobs v. N.C. Admin. Off. of the Courts*,
    780 F.3d 562 (4th Cir. 2015) .......................................................................................7

*Johansen v. Efinancial, LLC*,
    No. 2:20-cv-01351, 2022 WL 168170 (W.D. Wash. Jan. 18, 2022) ................13, 14

*Krakauer v. Dish Network, L.L.C.*,
    925 F.3d 643 (4th Cir. 2019) ..................................................................................8, 15

*Mattson v. Quicken Loans, Inc.*,
    No. 3:18-CV-00989, 2020 WL 6365506, at *2 (D. Or. Sept. 2, 2020) ................9, 10

*Meadows v. Franklin Collection Serv.*,
    414 F. App'x 230 (11th Cir. 2011) .............................................................................11

*Orsatti v. Quicken Loans, Inc.*,
    No. 2:15-cv-09380, 2016 WL 7650574 (C.D. Cal. Sept. 12, 2016)..........................13

*Scruggs v. CHW Grp., Inc.*,
    No. 2:20-cv-48, 2020 WL 9348208 (E.D. Va. Nov. 12, 2020) .................................................7

*Sedar v. Reston Town Ctr. Prop., LLC*,
    988 F.3d 756 (4th Cir. 2021) .................................................................................................7

*Simmons v. Charter Comm'ns, Inc.*,
    222 F. Supp. 3d 121 (D. Conn. 2016), *aff'd*, 686 F. App'x 48 (2d Cir. 2017)............12, 13, 14

*Southwell v. Mortg. Investors of Ohio*
    No. C13–1289 MJP, 2014 WL 4057166 (W.D. Wash. Aug. 14, 2014) ...................................9

*Stevens-Bratton v. TruGreen, Inc.*,
    437 F. Supp. 3d 648 (W.D. Tenn. 2020)................................................................................8

*United States v. Bynum*,
    No. 3:21-CV-00037, 2022 WL 528864 (W.D.N.C. Feb. 22, 2022) .........................................7

*Wakefield v. ViSalus, Inc.*,
    No. 3:15-CV-1857, 2019 WL 2578082 (D. Or. June 24, 2019) .............................................15

*Wilson v. PH Phase One Operations L.P.*,
    422 F. Supp. 3d 971 (D. Md. 2019) .......................................................................................7

**Statutes, Rules, and Regulations**

47 U.S.C. § 227(a), (c), (d) .......................................................................................... *passim*

47 C.F.R. § 64.1200(c), (d), (f) ..................................................................................... *passim*

*In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*,
    7 FCC Rcd. 8752 (1992) .....................................................................................................7, 8

## PRELIMINARY STATEMENT

Plaintiff Amanda Boardman asserts two claims under the Telephone Consumer Protection Act ("TCPA"), alleging that defendant Green Dot Corporation ("Green Dot") violated provisions of the TCPA related to regulations concerning the National Do Not Call Registry ("NDNCR") and the maintenance of an internal do not call ("IDNC") list. Plaintiff's motion ("Motion") seeks summary judgment only with respect to her IDNC claim. In seeking such relief, however, Plaintiff fails to offer record evidence to support her Motion and instead, requests "inferences" in her favor that are inappropriate at the summary judgment stage.

First, there is no private right of action for Plaintiff's IDNC claim. Even if there were, however, Plaintiff fails to present sufficient evidence that the phone number at issue (the "8255 Number") was "residential" as required to trigger the TCPA or was even her phone number at the time the texts were sent. This failure in proof alone is sufficient grounds for the Court to deny Plaintiff's Motion and enter summary judgment in Green Dot's favor. There is also no evidence with respect to whether the phone numbers for putative class members qualify as residential, an issue on which Plaintiff also requests summary judgment.

Moreover, the record is undisputed that Green Dot had the requisite policies in place and that it honored the request not to receive further telemarketing messages within 30 days. Finally, even if the undisputed evidence supported Plaintiff's claims, Plaintiff's Motion should be denied because Green Dot's conduct is entitled to protection under the TCPA's safe harbor defense. Indeed, it is undisputed that any potential violation was the result of good faith error – exactly the sort of circumstance to which the TCPA's safe harbor should apply.

## RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS[1]

Paragraphs 1-2 of Section A of Plaintiff's Statement of Facts (Mot. at 2-3) are undisputed.[2]

With respect to the second sentence of Paragraph 3 of Section A, Green Dot disputes Plaintiff's claim that "Green Dot does not know whether an individual has to verify a telephone number prior to receiving text messages." Green Dot only sends marketing text messages to customers who provide a phone number and opt in to receive such messages during the account registration process by checking the box with the following language:

> I consent to receive automated marketing calls or text messages from or on behalf of Green Dot Bank about special offers and promotions, up to a maximum of 3 per week. Consent is not required to use your account. You may cancel marketing messages by texting "STOP." Message and data rates may apply.

(SF ¶ 14.)

Green Dot maintains records of customers who complete this registration flow, including the phone numbers of customers who opt in to receive marketing text messages. (*Id.* ¶ 15.)

Paragraphs 4-5 of Section A are undisputed, except that Green Dot disputes Plaintiff's characterization of why Green Dot sends text messages (Mot. at 2-3) and instead refers the Court to Green Dot's Statement of Facts, which explains that Green Dot uses text messages for a variety of purposes to communicate with its customers. (SF ¶¶ 9-15, Younessi Decl. ¶¶ 5-7.)[3]

Green Dot disputes Paragraph 6 of Section A, insofar as the phrase "primarily responsible for marketing text messages" is vague and ambiguous. Green Dot's Customer Relationship

---

[1] The facts set forth in Green Dot's Motion for Summary Judgment (Dkt. 38) are incorporated as if fully set forth herein. References to "SF" refer to Green Dot's statement of undisputed facts.

[2] Plaintiff's Statement of Undisputed Facts are not set forth in numbered paragraphs. Accordingly, Green Dot attempts to identify each purported fact by specifying the page and paragraph within a given section.

[3] References to Younessi Decl. and Exs. 1-13 refer to the Declaration of Sara Younessi and accompanying exhibits (Dkt. 38.)

2

Management ("CRM") Team is "responsible for [sending] text messages to customers if they are opted-in to receive them." (Dkt. 37-2, Younessi Tr. 17:13-19; Dkt. 37-1, Porter Tr. 13:7-12; 30:25—31:21.) Green Dot disputes that it started using Salesforce Marketing Cloud only two and a half years ago. (Dkt. 37-2, Younessi Tr. 15:12-19.)

Paragraph 7 of Section A is undisputed.

Paragraph 8 of Section A is undisputed, except that Green Dot disputes any suggestion that its procedure regarding opt-outs is not in writing. (Younessi Decl. Exs. 3-8.)

Paragraph 9 of Section A is disputed. Green Dot sends transactional text messages in response to a customer initiated request, such as a request for balance information. (Younessi Decl. ¶ 5.) Green Dot further states that customers will still receive a two-factor authentication text when attempting to log into their account following a stop request. (Dkt. 37-1, Porter Tr. 52:9-23.)

Paragraph 10 of Section A (Mot. at 4-5) is disputed. Plaintiff mischaracterizes the content and use of Green Dot's Do-Not-Contact list. Green Dot has historically maintained a Do-Not-Contact list, for as long as Green Dot has sent out marketing text messages. (Dkt. 37-1, Porter Tr. 72:11—73:13.) The Do-Not-Contact list contains a phone number and the date and time the phone user requested to opt-out of receiving marketing text messages. (Dkt. 37-2, Younessi Tr. 40:4-10.) Green Dot's CRM team is responsible for sending marketing text messages through Salesforce, where the Do-Not-Contact list is maintained. (SF ¶¶ 35, 39, 42-45.) Plaintiff asserts that customer service representatives do not have direct access to the Do-Not-Contact list (Mot. at 5) but ignores that customer service representatives do not place any outbound sales calls (nor do any Green Dot employees) and do not send marketing text messages. (Dkt. 37-1, Porter Tr. 89:13-

22.)  Thus, the Green Dot employees who are responsible for sending marketing text messages have direct access to the Do-Not-Contact list.

Paragraphs 11 and 12 of Section B and the title of Section B are disputed.  (Mot. at 5-6.)  Green Dot "was not aware that it had to apply two filters to exclude opt-outs from its text message campaigns" and "did not learn of the two filters until after the filing of this lawsuit. . . ."  (Mot. at 5.)  It is undisputed that Green Dot believed it was excluding its entire Do-Not-Contact list from the receipt of marketing messages at the time it was transmitting such messages.  (Mot. at 5; Dkt. 37-2, Younessi Tr. 19:11-22.)  Green Dot disputes that whether Green Dot offers business accounts has any bearing on the issue of whether Plaintiff or putative class members qualify as a residential telephone subscriber.  (Mot. at 5, 18.)

Paragraph 13 of Section C and the title of Section C are disputed.  (Mot. at 6.)  Plaintiff has offered no evidence to support her claim that she is the sole user of the 8255 Number, and the evidence further shows that Plaintiff used the 8255 Number for commercial purposes.  (SF ¶¶ 3-8, Smith Decl. Ex. A.)

Paragraph 14 of Section C is disputed, as it assumes the 8255 Number belongs to Plaintiff.  Plaintiff has offered no evidence beyond her own testimony to support her claim that the 8255 Number belongs to her at the time the texts were sent.  (SF ¶¶ 3-4, 7-8.)  Plaintiff's assertion is inconsistent with Green Dot's records, which show that the 8255 Number was provided in connection with two separate accounts associated with different names.  (SF ¶¶ 16-20; Smith Decl. Ex. A; Younessi Decl. Ex. 12.)

Paragraph 15 of Section C is disputed.  Green Dot's records reflect that customers who send Stop messages frequently opt back in to receive marketing text messages.  (Younessi Ex. 11;

4

Smith Decl. Ex. B ¶ 59.)[4]  With respect to transactional messages, these messages are sent in response to a customer's account activity.  (Younessi Decl. ¶ 5.)

Paragraph 16 of Section C is disputed.  Plaintiff claims that she received transactional text messages after sending an opt-out request, but such messages are irrelevant to her IDNC claim. Furthermore, Plaintiff texted Green Dot requesting account balance and history information, which stimulated outbound transactional text messages.  (Younessi Decl. ¶¶ 5, 29-30, 34 and Ex. 13.)

Paragraphs 17-18 of Section C are undisputed.

Paragraph 19 of Section C is disputed.  Green Dot disputes Plaintiff and Plaintiff's expert's claim that "[t]he data demonstrates . . . ███████ of consumers receiving more than one text message after an opt-out request within a 12-month period."  (Mot. at 8.)  Woolfson's analysis is incomplete because he failed to account for any instances in which a customer opted back in to receiving marketing text messages.  (Smith Decl. Ex. B ¶ 59.)

Paragraph 20 of Section C is disputed.  Green Dot revised its marketing campaigns to add the additional filter in order to ensure customers who requested not to receive marketing text messages did not receive further messages.  (SF ¶ 67.)

Green Dot disputes Paragraph 21 of Section D and the title of Section D.  (Mot. at 9.) Green Dot employees receive training when they begin working at Green Dot and routinely thereafter.  (SF at ¶ 27.)  This training is provided using a software tool, BAI, where employees read and study written material specifically related to compliance with the TCPA.  (*Id.* ¶¶ 28-29.) Green Dot employees are subsequently tested on the material to ensure they learned the material and understood it.  (*Id.* ¶¶ 29-30.)  Green Dot employees are required to complete the training, and compliance is tracked through the BAI software.  (*Id.* ¶ 31.)  Kenneth Sponsler, an expert with

[4] References to Smith Decl. Exs. A-F refer to the Declaration of Whitney Smith and accompanying exhibits (Dkt. 38.)

respect to TCPA compliance, has opined that these policies meet or exceed the standards required for the industry. (Smith Decl. Ex. B ¶¶ 94-98.)

Green Dot disputes Paragraph 22 of Section D. Green Dot refers to the training described above (*Id.* ¶¶ 27-31) and further states that it does not make "telephone solicitations" or place outbound calls. (Mot. at 11; Dkt. 37-1, Porter Tr. 99:13-24.)

Green Dot disputes Paragraph 23 of Section D. Green Dot employees are able to access training documents and policies at any time. (SF ¶¶ 32-33.) Green Dot employees are trained regarding Green Dot's policies. (*Id.*)

Green Dot disputes Paragraph 24 of Section D. Green Dot employees "shadow each other to learn how to do something" and are trained "within the [Salesforce] platform" on how to apply filters to suppress text messages to individuals on the Do-Not-Contact list. (Dkt. 37-2, Younessi Tr. 35:10-20.) At all times, Green Dot believed it was taking appropriate steps to exclude customers who had opted out of the receipt of further text messages. (Younessi Decl. ¶¶ 38-39.)

## LEGAL STANDARD

Summary judgment is not warranted if there is a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The movant bears the initial burden of identifying portions of the record that demonstrate that there is no such genuine dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if its existence would affect the disposition of the case under the applicable law, and a dispute is genuine if "the evidence offered is such that a reasonable jury might return a verdict for the non-movant." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Even if the moving party meets its burden, the non-moving party may still prevail if it presents "sufficient evidence" that a genuine dispute exists. *Duarte v. Truist Bank*, No. 3:20-cv-00270-FDW-DSC, 2021 WL 4810337, at *1 (W.D.N.C. Oct. 14, 2021) (Whitney, J.).

In evaluating the parties' evidence, however, the inquiry is not whether the movant's version of events is less credible than that of the non-movant; indeed, this Court has consistently found that summary judgment is inappropriate where resolution would require the Court to resolve the credibility of witnesses and weigh the evidence. *E.g.*, *United States v. Bynum*, No. 3:21-cv-00037-FDW-DCK, 2022 WL 528864, at *1-2 (W.D.N.C. Feb. 22, 2022) (Whitney, J.); *Duarte*, 2021 WL 4810337, at *1. Consequently, "[s]ummary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Off. of the Courts*, 780 F.3d 562, 568 (4th Cir. 2015) (citation omitted). Rather, summary judgment may only be granted when, after taking all evidence and justifiable inferences in the light most favorable to the non-movant, the Court concludes that "the evidence could not permit a reasonable jury to return a favorable verdict" for the non-movant. *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021).

## ARGUMENT

Plaintiff's entire Motion is predicated upon her claim that there is a private right of action available for claims related to alleged violations of regulatory section 47 C.F.R. § 64.1200(d). Plaintiff ignores the split of authority with respect to whether a private plaintiff can enforce these regulatory provisions—a question this Court explicitly left open in connection with Green Dot's motion to dismiss. (Dkt. 23 at 5.)

"Recently, courts in the Fourth Circuit have found that the TCPA does not provide a private right of action for violations of 47 C.F.R. § 64.1200(d)." *Scruggs v. CHW Grp., Inc.*, No. 2:20-CV-48, 2020 WL 9348208, at *9 n.5 (E.D. Va. Nov. 12, 2020). This is because "the requirements of § 64.1200(d) set forth the procedural standards for telemarketers to maintain their own, company-specific, do-not-call lists and, consequently, appear to fall under the aegis of subsection *d* of the TCPA [i.e., 47 U.S.C. § 227(d)]," rather than 47 U.S.C. § 227(c). *Wilson v. PH Phase*

*One Operations L.P.*, 422 F. Supp. 3d 971, 981-82 (D. Md. 2019) (citing *Worsham v. Travel Options, Inc.*, No. JKB-14-2749, 2016 WL 4592373, at *4 (D. Md. Sept. 2, 2016), *aff'd*, 678 F. App'x 165 (4th Cir. 2017)); *see also In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752, 8779 (1992) (referring to certain regulations contained in 47 C.F.R. § 64.1200(d) as explicitly being promulgated pursuant to the FCC's authority under 47 U.S.C. § 227(d)).

Accordingly, there is no private right of action for Plaintiff's IDNC claim. Even if there was, however, there is no evidence to support Plaintiff's claim and her Motion should be denied.

## I. PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE IS NO EVIDENCE TO SUPPORT THE RESIDENTIAL TELEPHONE SUBSCRIBER ELEMENT OF THE CLAIM

Section 227(c) of the TCPA only protects *residential* telephone subscribers. 47 U.S.C. § 227(c)(5) (providing a private right of action for violations of regulations concerning residential telephone subscribers). As Green Dot established in its motion for summary judgment (Dkt. 38) and as the Fourth Circuit has recognized, "[t]he [TCPA] requires that an individual receive a call on [her] own residential number, a call that [she] previously took steps to avoid." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 653 (4th Cir. 2019); *see also Cunningham v. Politi*, No. 4:18-CV-00362-ALM-CAN, 2019 WL 2519702, at *4 (E.D. Tex. Apr. 26, 2019), *adopted by* 2019 WL 2526536 (E.D. Tex. June 19, 2019); *Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648, 658-59 (W.D. Tenn. 2020) (granting summary judgment because the plaintiff had failed to adequately prove that her cell phone was used for residential purposes); 47 C.F.R. § 64.1200(c).

1. <u>Plaintiff Has Not Established that the 8255 Number Belongs to Her or Is Residential</u>

Plaintiff must establish that she is both the user of the 8255 Number and that the number is "residential." Plaintiff fails to offer evidence with respect to these threshold issues beyond her own testimony, notwithstanding that this information has been requested in discovery. (SF ¶ 4.)

8

Plaintiff argues that "wireless telephones can be 'residential' telephone numbers protected by the TCPA," (Mot. at 17) but wireless telephones are not necessarily residential. This is particularly true "where there was evidence that the individual maintained a traditional land line in addition to their wireless line." *Hand v. Beach Ent. KC, LLC*, 456 F. Supp. 3d 1099, 1120 n.5 (W.D. Mo. 2020). Plaintiff testified at her deposition that, ███████████████████████████████████ ███████████████████████ (SF ¶ 8.) Plaintiff further testified that ███████████████████ ██████████████████████████████████████████████████████████████ ████████████████████████████ (SF ¶¶ 5-6.) Plaintiff's own proffered expert stated in his deposition that phone carriers can provide documentary evidence that a phone number is residential, but Plaintiff has not produced any such evidence regarding the 8255 Number. (SF ¶ 7.)

None of the cases cited by Plaintiff in her Motion absolves her of this burden. In *Clauss v. Legend Securities, Inc.*, the plaintiff's phone number was listed in the phone book as residential and there was no evidence that the phone number in question was a cell phone. No. 4:13–cv–00381–JAJ, 2014 WL 10007080, at *2 (S.D. Iowa Sept. 8, 2014). Even on that record, however, summary judgment was denied because the parties disputed whether the number at issue was a business number. *Id.* at *3. *Southwell v. Mortg. Investors of Ohio* did not hold that mixed-use phone numbers are protected by the TCPA, and instead summarily determined that that the phone was residential without elaborating on its underlying reasoning. No. C13–1289 MJP, 2014 WL 4057166, at *3 (W.D. Wash. Aug. 14, 2014). In *Mattson v. Quicken Loans*, the court grappled with the question of whether a cell phone, paid for by an employer, could still be a residential phone number. No. 3:18-cv-00989-YY, 2020 WL 6365506, at *2 (D. Or. Sept. 2, 2020). This is

not relevant to the present inquiry, where Plaintiff has offered no evidence beyond her own testimony to support her assertion that her phone number is residential.

    2.    <u>There Is No Evidence That Putative Class Members' Phone Numbers Are Residential</u>

Plaintiff's argument that the proposed class members' telephone numbers are residential is even more overreaching.[5]  Plaintiff has offered no evidence—much less *undisputed* evidence—that any putative class member is a residential subscriber.  Plaintiff asserts that because Green Dot only offers personal bank accounts, not business accounts, all telephone numbers used to register for Green Dot accounts must be residential.  (Mot. at 18.)  This fails to establish this element of the claim, however, because an individual could use any phone number, including a business number, to register for a Green Dot bank account and there is no evidence to the contrary.  For example, in *Mattson v. New Penn Financial, LLC*, the court found that the factual dispute presented by the plaintiff's phone number defeated class certification where there were individualized issues as to whether the phone number in question was residential where the plaintiff used a business-reimbursed phone number in connection with a personal transaction.  2021 WL 2888394, at *2 (D. Or. Jul. 9, 2021).

Rather than offer the requisite evidence, Plaintiff asks this Court to make a "common sense inference" in favor of her and the putative class on this critical element of her claim.  However, "[a]t the summary judgment level, . . . the rules are clear. . . .  A court may not draw inferences to fill in the gaps of the movant's case."  *In re Caucus Distribs., Inc.*, 83 B.R. 921, 926 (Bankr. E.D.

---

[5] Green Dot will establish in its forthcoming opposition to class certification that the determination of whether a phone number qualifies as "residential" constitutes an individualized inquiry and will further address the issues unique to Plaintiff's claim that preclude her from serving as a class representative.

Va. 1988). This Court should likewise deny Plaintiff's request to grant an "inference" with respect to any element of her claim.

## II.      GREEN DOT DID NOT VIOLATE 47 C.F.R. § 64.1200(D)

### A.      It Is Undisputed That Green Dot Complied with Regulatory Standards

The TCPA prohibits a business from "initiat[ing] any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d). These procedures require a business to: (1) maintain a written policy; (2) "[t]rain[] of personnel engaged in telemarketing" on the "existence and use of the do-not-call list"; (3) record the do-not-contact request, with the subscriber's name, if provided, and telephone number, and (4) honor that request within thirty days. *Id.* The record here is undisputed that Green Dot has met these requirements.[6]

First, Plaintiff's claim that "there is no standalone Do-Not-Call list maintained by Green Dot" is baseless. (Mot. at 17.) Green Dot undisputably maintains an IDNC list, which it has maintained since Green Dot began sending marketing text messages. (SF ¶¶ 25-26.)

Second, Green Dot's IDNC list contains "mobile phone numbers" and a record of each mobile phone number's stop request. (Dkt. 37-2, Younessi Tr. 38:9—40:3; Dkt. 37-1, Porter Tr. 72:7—73:13.) Green Dot has further established that it uses the IDNC list to "exclude[]" the mobile numbers on the list from its marketing campaigns. (*Id.*)

Third, it is likewise undisputed that Green Dot provides training on these policies. Green Dot's marketing compliance training is designed to mitigate consumer harm and regulatory

---

[6] Only two of the text messages sent to Plaintiff can even potentially be considered marketing text messages. Transactional text messages are not covered by the TCPA's Do Not Call provisions. *See, e.g.*, *Meadows v. Franklin Collection Serv.*, 414 F. App'x 230, 236 (11th Cir. 2011) (affirming summary judgment under § 227(c)(5) where the defendant did not try to sell anything or offer any services).

compliance risks by educating Green Dot employees on relevant laws, regulations, and internal policies. (SF ¶¶ 21-34.) Marketing text messages are not sent without "prior express written consent" in the form of an "'opt-in' from customers who wish to receive messages sent to their wireless devices or cellphones." (Younessi Ex. 7.) The training documents also require that customers be given an opportunity to "opt-out" of receiving messages. (*Id.*) Green Dot emphasizes the requirement that it must maintain an IDNC list and must honor a customer's request not to be contacted again. (*Id.*) Mr. Sponsler has opined that these policies meet or exceed the standards required for the industry. (Smith Decl. Ex. B ¶¶ 94-98.) The record further shows that Green Dot did not send a marketing text outside the 30-day grace period.

In an effort to disregard Green Dot's policies and procedures, Plaintiff seeks to impose a stricter requirement upon Green Dot than the TCPA calls for by arguing that Green Dot's policy "parroted the words of the statute" in a more general policy document. (Mot. at 15.) This position lacks merit. There is "no authority to indicate that the written procedures required by subsection (c)(2)(i)(A) are required to be memorialized in a single, internal document." *Simmons v. Charter Comm'ns, Inc*., 222 F. Supp. 3d 121, 136 (D. Conn. 2016), *aff'd*, 686 F. App'x 48 (2d Cir. 2017). This is true even where there was "no serious dispute that [a defendant] has failed to provide evidence of a comprehensive, internal document that constitutes its policies and procedures regarding compliance with the national DNC rules." *Id.* Moreover, Plaintiff's argument that Green Dot lacked the minimum procedures because it allowed vendors and software to handle opt-outs is without any legal support. (Mot. at 15.) Companies are permitted to engage outside third-parties and vendors to help ensure compliance with the TCPA. *See generally Simmons*, 222 F. Supp. 3d 121. Plaintiff also cites no authority to support her assertion that Green Dot is not permitted to use computer software to maintain an IDNC list.

Plaintiff also argues that Green Dot's inadvertent failure to apply a second filter necessary to suppress opt-outs automatically demonstrates that there was insufficient training regarding TCPA compliance. This argument misses the mark—the "TCPA's goal [is] encouraging the use of 'reasonable practices and procedures'" that both "protect individuals' privacy [and] . . . limit the liability of companies seeking to contact [] existing customers." *Simmons*, 222 F. Supp. at 135. Plaintiff seeks to punish Green Dot for human error, which is entirely misaligned with the TCPA's purpose. Green Dot has explained the "procedural breakdowns that led to such [messages], as well as the steps that [it] has taken to minimize future errors." *In Re Dynasty Mortg., L.L.C.*, 20 F.C.C. Rcd. 4921, 4929 (2005). This is exactly the kind of inadvertent error the safe harbor defense, discussed *infra* 13-14, is designed to protect. *Simmons*, 222 F. Supp. 3d at 135 (finding "[a] party can support a claim of error by showing that the telephone solicitation was made unintentionally").

## B. Green Dot Honored Plaintiff's Stop Request Within 30 Days

The FCC allows companies a "reasonable" amount of time, not to exceed 30 days, to honor a customer's request to opt-out of messaging. *See* 47 C.F.R. § 64.1200(d)(3). The record is undisputed that Green Dot did not receive a stop request from the 8255 Number until February 20, 2021. The only text messages sent to the 8255 Number that could even conceivably qualify as telemarketing were the March 18 and 19 Messages. Those messages, however, were sent within 30 days of the stop request, i.e., the grace period provided for by FCC rules. (Dkt. 38 at 15.) Application of the grace period is particularly appropriate here, where there was repeated account interaction between the stop request and the March 18 and 19 Messages. (SF ¶¶ 56-57.) Thus, Plaintiff's motion should be denied on this basis and Green Dot's granted. *See Orsatti v. Quicken Loans, Inc.*, No. 2:15–cv–09380–SVW–AGR, 2016 WL 7650574, at *7 (C.D. Cal. Sept. 12, 2016) (granting summary judgment for defendant who called plaintiff less than 30 days after her stop

request because "such a call would be covered by the safe harbor provision of the FCC regulation and would not constitute a cause of action").

### C. It Is Undisputed That Green Dot's March 18 and 19 Messages Were Sent In Error and the Safe Harbor Applies

Plaintiff's Motion is also without merit because Green Dot is entitled to protection under the TCPA's safe harbor provisions. In addition to the policies and procedures discussed above, to benefit from the safe harbor defense, Green Dot must also show that the March 18 and March 19 texts were "placed in error." *Johansen v. Efinancial, LLC*, No. 2:20-cv-01351-DGE, 2022 WL 168170, at *5 (W.D. Wash. Jan. 18, 2022). It is undisputed that they were. "A party can support a claim of error by showing that the telephone solicitation was made unintentionally." *Simmons*, 222 F. Supp. 3d at 135.

Green Dot has established that it (i) had a process to obtain consent before sending text messages, and (ii) used Salesforce to create a recipient list of individuals who opted in to receive marketing text messages. (SF ¶¶ 35-38, 43-45.) Plaintiff concedes that Green Dot "was not aware that it had to apply two filters to exclude opt-outs from its text message campaigns" and "did not learn of the two filters until after the filing of this lawsuit. . . ." (Mot. at 5.) It is undisputed that Green Dot believed it was excluding its entire Do-Not-Contact list from marketing messages. (*Id.*; Dkt. 37-2, Younessi Tr. 19:11-22.)

Moreover, with respect to the texts sent to the 8255 Number, Green Dot also had a good faith belief that it was communicating with its customer, particularly given the repeated attempts to access the Green Dot account. (SF ¶ 56.) Indeed, even Plaintiff admits that she sent account related text messages to Green Dot. (SF ¶ 50.) Green Dot, however, mistakenly sent text messages to Plaintiff after she texted "STOP" based upon its good faith belief that it had taken appropriate steps to suppress further text messages to any individual on Green Dot's IDNC list. (SF ¶¶ 54-60.)

Once it became aware of the error, it promptly took corrective action. (SF ¶ 67.) Where a company maintains policies and procedures in compliance with the TCPA and inadvertently contacts a customer due to a "mistaken belief" that Plaintiff had consented to being contacted, such a belief "constitutes an 'error' within the purview of the TCPA safe harbor provisions." *Efinancial*, 2022 WL 168170, at *6. Thus, regardless of any question of fact as to whether plaintiff consented to be contacted, the "TCPA's safe harbor provisions would still apply." *Id.*

### D. It Is Undisputed That Green Dot's March 18 and 19 Messages Were Sent In Error and Were Not Willful or Knowing

Plaintiff's Motion for a determination that purported TCPA violations by Green Dot were willful or knowing is unsupported by the evidence. Courts have held that for a TCPA violation to be willful or knowing, "Plaintiff [must] demonstrate that [Defendant] should have known that [it was] calling a person who did not provide prior express consent." *Wakefield v. ViSalus, Inc.*, No. 3:15-cv-1857-SI, 2019 WL 2578082, at *2 (D. Or. June 24, 2019) (denying treble damages where violations were inadvertent and there could be no deterrent purpose, where "Defendant ceased making unlawful calls almost as soon as it learned of Plaintiff's claims.") Plaintiff repeatedly admits (Mot. at 5-8) that Green Dot inadvertently sent text messages to Plaintiff following a "stop" request.

Nor does Plaintiff offer any authority to support her request for enhanced damages. *Krakauer v. Dish Network, LLC*, upon which Plaintiff relies, is distinguishable. There, Dish repeatedly "noted [its agent's] noncompliance [with the TCPA] and failed to act." 925 F.3d at 662. Dish had also been the subject of "lawsuits and enforcement actions . . . for telemarketing activities, none of which prompted the company to seriously improve its business practices." *Id.* This case provides no basis for the relief Plaintiff seeks.

## <u>CONCLUSION</u>

Green Dot respectfully requests this Court deny Plaintiff's Motion.

This, the 27th day of April, 2022.

KELLEY DRYE & WARREN LLP

By:     s/ *Whitney M. Smith*
        Lauri A. Mazzuchetti (*Pro Hac Vice Application
              Forthcoming*)
        Whitney M. Smith (*Pro Hac Vice*)

        One Jefferson Road
        Parsippany, New Jersey 07054
        Telephone:  (973) 503-5900
        Facsimile:  (973) 503-5950
        Email:  lmazzuchetti@kelleydrye.com
        Email:  wsmith@kelleydrye.com

        *Attorneys for Defendant*


        NELSON MULLINS RILEY
        & SCARBOROUGH LLP

By:      s/*Thomas G. Hooper*
        Thomas G. Hooper
        N.C. State Bar No. 25571
        301 South College Street, Suite 2300
        Charlotte, North Carolina 28202
        Telephone:  (704) 417-3000
        Facsimile:  (704) 377-4814
        Email:  tom.hooper@nelsonmullins.com

        William H. Latham
        N.C. State Bar No. 29578
        1320 Main Street
        Columbia, SC  29201
        Telephone:  (803) 255-9533
        Facsimile:  (803) 255-9075
        Email:  bill.latham@nelsonmullins.com

## WORD-COUNT CERTIFICATION

The undersigned certifies that, according to the word count feature in Microsoft Word, the text of this memorandum of law, excluding the case caption, table of contents, table of authorities, and certificates of counsel, does not exceed 6,000 words.

This, the 27th day of April, 2022.

KELLEY DRYE & WARREN LLP

By:     s/ *Whitney M. Smith*
        Lauri A. Mazzuchetti (*Pro Hac Vice Application Forthcoming*)
        Whitney M. Smith (*Pro Hac Vice*)

        One Jefferson Road
        Parsippany, New Jersey 07054
        Telephone: (973) 503-5900
        Facsimile: (973) 503-5950
        Email: lmazzuchetti@kelleydrye.com
        Email: wsmith@kelleydrye.com

        *Attorneys for Defendant*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that on April 27, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:  David M. Wilkerson, Esq. (dwilkerson@vwlawfirm.com) and Ignacio Javier Hiraldo, Esq. (ijhiraldo@ijhlaw.com).

KELLEY DRYE & WARREN LLP

By:  <u>s/ *Whitney M. Smith*</u>
Lauri A. Mazzuchetti (*Pro Hac Vice Application
  Forthcoming*)
Whitney M. Smith (*Pro Hac Vice*)

One Jefferson Road
Parsippany, New Jersey 07054
Telephone:  (973) 503-5900
Facsimile:  (973) 503-5950
Email:  lmazzuchetti@kelleydrye.com
Email:  wsmith@kelleydrye.com

*Attorneys for Defendant*